[No. 4874. Decided March 24, 1904.]

## AMBROSE CARSON et al., *Appellants,* v. GEORGE W. FOGG et al., *Respondents.*[1]

ATTORNEY AND CLIENT—ATTORNEY'S PURCHASE OF ADVERSE TITLE—TERMINATION OF EMPLOYMENT—USING INFORMATION AGAINST CLIENT—TRUSTS. Where an attorney buys in an outstanding title adverse to the title of his client, concerning which he was employed, he holds it in trust for his client, even if the employment was terminated, for the reason that he cannot use his information against his client.

SAME. This rule is especially applicable where the attorney was to be paid a certain part of "whatever may be saved, had, received or recovered," since the employment was thereby extended beyond the time of actual litigation, and contemplated a fiduciary relation.

SERVICES — CONTRACT FOR ONE-HALF OF AMOUNT SAVED — ACCOUNTING. Where an attorney defends a foreclosure suit for one-half of whatever may be saved or recovered, and after judgment of foreclosure and sale, undertakes to negotiate a sale to a third person of three of the five lots for a sum sufficient to buy up the certificate of sale, pay all expenses, and $500 additional, which was paid to the clients for a quitclaim of the three lots, the attorney cannot purchase for his own use the certificate of sale and hold the same for redemption against the remaining two lots, on the theory that his employment had ceased; but, on such purchase, he holds the certificate in trust for the clients; and upon an accounting he is entitled, under the terms of his contract of employment, to one-half of the two lots redeemed by the sale, and one-half of the $500 paid to the clients.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered June 4, 1903, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to quiet title. Reversed.

*E. W. Taylor, Govnor Teats,* and *R. H. Lund,* for appellants.

*George W. Fogg, pro se.*

1Reported in 76 Pac. 112.

HADLEY, J.—Appellants brought this action to quiet title to certain lots of land in the city of Tacoma. It is alleged that the appellants are the sole surviving heirs of John Carson, deceased, to whom the said real estate belonged in his life time, and that as such heirs they succeeded to ownership of the lots. It is also averred that each of the defendants in the action unjustly pretends to have some claim or interest in the property.

The only defendant who joined issue with the complaint was George W. Fogg. He answered, admitting that he claims an interest in the land, but denying that such claim is unjustly made. He further answered affirmatively, that in May, 1901, his co-defendant, Settlement Company, instituted an action against the plaintiffs to foreclose a certain mortgage upon the lots in question and others, which mortgage was made by the plaintiffs' said father in his life time; that the plaintiffs in this action appeared as defendants in said foreclosure action, answered the complaint, and made defense thereto; that the plaintiff in the foreclosure action recovered a judgment and the mortgaged lands were ordered sold under decree of foreclosure; that the same were sold under the order of sale, and were bid in by the plaintiff in that action, said Settlement Company; that thereafter, by assignment, one Joshua Pierce became the owner of the certificate of sale, and that the same was by him duly sold and assigned to Mr. Fogg, the answering defendant; that said Fogg assigned the certificate to his co-defendant F. S. Pratt, but that afterwards, inasmuch as it was intended to sell and assign to said Pratt only so much of the interest in said certificate as covered and included three lots in block 1302 mentioned therein, the said Pratt assigned to said Fogg so much of the certificate as related to the two lots in question in this action; that said Fogg is now the owner and holder

29-34 WASH.

of so much of said certificate as covers and relates to lots 14 and 15, block 709; that his said holding is subject to the plaintiffs' right of redemption, and constitutes the claim which they allege is unjustly asserted. The reply denies the averments of the affirmative answer. The cause was tried before the court without a jury, and a decree was rendered in favor of the defendant Fogg. The plaintiffs have appealed.

The proofs show that the plaintiffs in this action, when they were defendants in said foreclosure cause, employed H. F. Norris as their attorney to make defense for them in that action, and that they authorized him to associate with him, for his assistants in the defense, any other attorneys whom he chose to select. A written memorandum to the above effect was signed by all the said defendants in the foreclosure action, the plaintiffs here. On the same day the following further written memorandum was signed by three of said defendants, now three of the plaintiffs here. The fourth does not however dispute the correctness of the terms of the memorandum, but acquiesces therein. It is as follows:

"We hereby stipulate and agree that we will pay to Mr. Homer F. Norris, our attorney at law, and to whomsoever he shall associate with him in the management of said cause, a sum equal to one-half of the value of whatever may be saved, had, received or recovered to or for us in, or growing out of, the matter and cause known as the 'Settlement Company, a corporation, Plaintiff, vs. Frank A. Carson, Ambrose Carson, Nellie I. Hadlock, and Hattie S. Adams, Defendants,' the same being cause No. 18701, on the docket of the superior court, Pierce county, Washington, as compensation for their services as our attorneys in said cause."

The proof further shows that said Norris employed the respondent Fogg as his assistant, in pursuance of the

above written terms, and that the two acted as attorneys
of said defendants in making their defense to the fore-
closure action. The services of respondent were, therefore,
rendered under the terms of said memorandum of agree-
ment. No appeal was taken from the foreclosure decree.
The defendants therein, the plaintiffs here, understood
that an appeal would be taken, but their said attorneys
stated to them that they did not see their way clear to
appeal.

Thereafter Mr. Pratt, one of the defendants here, de-
sired to purchase three of the five lots included in said
foreclosure decree. The services of respondent Fogg were
sought to aid in procuring a good title to the three lots,
and he undertook to do so. The purchaser was willing to
pay $8,300 for good title to the three lots. Said sum
was over $800 in excess of the total amount required to
redeem all the lots from the said sheriff's sale. The pur-
chaser required a quitclaim deed from appellants for the
three lots, as a release of their right to redeem. Appel-
lants say respondent told them he could effect a sale of
the three lots for $1,000 in excess of the amount called
for by the certificate of sale, and that $500 would be for
them and $500 for respondent, thus leaving the other two
lots free from any lien. Respondent, upon the other hand,
says he simply told them he could get them $500 for a
quitclaim deed to the three lots. In any event, the quit-
claim was made by appellants, the $8,300 was paid by
the purchaser, and $500 to appellants. The certificate
of sale was transferred in such a manner, as aforesaid,
that respondent Fogg became the assignee of so much
thereof as relates to said lots 14 and 15, block 709. There-
after respondent informed appellants that he was the
owner of the certificate of purchase, and that the neces-

sary amount to redeem said two lots was the full amount of the judgment with interest and costs.

Respondent's position seems to be that he himself purchased the whole of the certificate from its then holder; that he has transferred so much thereof as relates to the three lots, but retains the ownership as to the two; that appellants, having for a consideration quitclaimed as to the three lots, cannot redeem as to them, and if they wish to redeem the other two they must pay the full amount of the judgment, in order to release them from the lien. It is furthermore respondent's position that the relation of attorney and client ceased between him and appellants with the close of the foreclosure case, and that he was thereafter as free to traffic in said lands as though that relation had never existed. It is the rule, however, that, even when the employment of an attorney is under an ordinary contract, if he shall buy in an outstanding title adverse to the title of his client, concerning which he has been consulted and employed as counsel, he buys it in trust for his client, if the latter shall elect to take it. This is true, even though the purchase is made after the actual relation of attorney and client has been terminated, for the reason that information acquired while that relation exists cannot thereafter be used by the attorney against his client. *Eoff v. Irvine,* 108 Mo. 378, 18 S. W. 907, 32 Am. St. 609; *Smith v. Brotherline,* 62 Pa. St. 461; *Davis v. Smith,* 43 Vt. 269; *Trice v. Comstock,* 121 Fed. 620, 61 L. R. A. 176; *Henry v. Raiman,* 25 Pa. St. 355, 64 Am. Dec. 703.

In *Trice v. Comstock, supra,* the court, at page 625, observed:

"Nor is it any defense to the suit to enforce this trust that the agency had terminated before the confidence was violated. The duty of an attorney to be true to his client,

or of an agent to be faithful to his principal, does not cease when the employment ends, and it cannot be renounced at will by the termination of the relation. It is as sacred and inviolable after as before the expiration of its term."

The above authorities, and others that might be cited, hold that the attorney is, under ordinary circumstances, prohibited from speculating against his client's interest in the subject-matter of the litigation, even after the relation of attorney and client has ceased.

If such is the rule under an ordinary contract of employment, the necessity of its application here is certainly emphasized, because of the peculiar and specific terms of the contract of employment. By reference to its terms as set out above, it will be observed that client and attorney are to share in the "value of whatever may be saved, had, received, or recovered." The terms of that contract necessarily extend beyond the time of actual litigation, and continue the relation of attorney and client until such time as all lands or moneys saved from the subject-matter of the litigation have been finally distributed between the two. The contract contemplated a fiduciary relation, which should in trust carefully account for everything of value not required to discharge the mortgage obligation, its attendant costs, and necessary expenses of the trust itself.

Respondent has been misled by the view that he was no longer an attorney in the premises. In his brief he frankly says that, if he was in error, he will gladly submit himself to the judgment of the court, "not being willing to profit in any manner through any act that may be thought to be of questionable professional propriety." We must therefore determine what relief shall be granted in the premises. It is clear, from what has been said, that there has already come into what we have called

"the trust" between attorney and client $8,300 in money, and the two lots frequently mentioned above. The money was received by respondent, and the court found that he paid upon the mortgage indebtedness $7,454.60, $300 to one Balkwill for services as a broker, $500 to these appellants, and $35.29 to an abstract of title company. The above items make a total paid out of $8,289.89, and leave a balance of $10.11 cash in respondent's hands. Appellants dispute the correctness of the items as to broker's services and abstract fee. We shall not undertake to say, however, that those expenditures may not have been necessary in behalf of the trust, in order to effect the sale which was made and the consequent advantageous results. From the finding of the court, the money was at least paid out by respondent, and he has received no benefit therefrom other than what may have resulted as benefit to the trust.

Thus the respective parties to the trust now hold as follows: Appellants, as the clients, upon the one hand, $500 in cash; and respondent, for the attorneys, upon the other, $10.11 in cash, and the certificate of sale for the two lots. An equal division of value should be effected, and such a decree rendered as will quiet the title of appellants to the undivided one-half of said two lots, and of respondent to the other undivided half. The total net cash in the hands of the trust is $510.11. One half thereof, to which respondent is entitled, is $255.05. Since he has received $10.11, the balance due him is $244.94. The decree should provide that appellants' interest in the land is subject to a charge of said last named sum in favor of respondent, with legal interest thereon from the date of the decree, and that the property shall remain subject to said charge as a lien until it shall be paid, or until the

affairs of the trust shall be mutually settled; provided, however, that, if the amount shall not be paid by settlement of the affairs of the trust, or otherwise, within one year from date of the decree, execution may thereafter issue against appellants' interest in the land, and the same may be sold in the manner of ordinary sales under execution to satisfy said charge.

The judgment is reversed, and the cause remanded with instructions to the trial court to enter a decree as above indicated.

FULLERTON, C. J., and ANDERS, DUNBAR, and MOUNT, JJ., concur.