KATE MAURER, APPELLEE, V. JOHN REIFSCHNEIDER ET AL., APPELLANTS.

FILED JUNE 26, 1911.    No. 16,414.

1. **Wills: NUNCUPATIVE WILLS: VALIDITY.** A nuncupative will is not effective to pass title to real estate in this state.

2. **Life Estates: LIFE TENANTS: ADVERSE POSSESSION.** The possession of land by a life tenant will not be construed to be hostile and adverse to a remainderman unless the knowledge is clearly brought home to the latter that the life tenant claims the entire estate in his own right, adverse and hostile to any claim or interest in the land by the remainderman or others claiming under him.

3. ———: ———: ———. The recording of a deed conveying the entire estate to a third person by a life tenant who remains in possession of the premises is not alone sufficient to start the running of the statute of limitations against an action to quiet title brought by the remainderman under sections 10868, 10870, Ann. St. 1909.

4. **Limitation of Actions.** Such an action does not accrue until knowledge that the life tenant in possession is claiming to own the entire fee is brought home to the owner of the remainder.

5. **Quieting Title: EQUITY.** In an action to quiet the title of a remainderman as against a life tenant in possession, equity will

46

require as a condition of relief that the plaintiff do equity by paying her proportion of a mortgage lien on the premises which existed at the time of the death of the commón ancestor and which was paid by the life tenant.

APPEAL from the district court for Dodge county: CON-RAD HOLLENBECK, JUDGE. *Affirmed in part and remanded.*

*A. R. Oleson* and *Byron G. Burbank,* for appellants.

*F. W. Button, I. L. Albert* and *Henry M. Kidder, contra.*

LETTON, J.

In 1894 Frederick Stegelmann owned and resided on a farm of 80 acres in Dodge county, Nebraska. He also owned another tract of 80 acres near-by. Shortly before his death, which occurred on July 28, 1894, and while absent from home, he made a nuncupative will in the following form: "If I should die I will all my property over to my wife as she has helped to earn it and, worked as hard as I have for it and I wish you to see to it that it should be that way." This declaration was made in the presence of three witnesses, and was afterwards reduced to writing, filed for probate, and allowed by the county court of Dodge county. Afterwards his widow, Emma Stegelmann, married John Reifschneider. Stegelmann left surviving him five brothers and two sisters, one of whom, Kate Maurer, is the plaintiff in this action. In 1897 and 1899 Emma Reifschneider conveyed all the real estate to her husband. The Reifschneiders paid off a mortgage upon the land which was given during the lifetime of Frederick Stegelmann, and afterwards executed another mortgage on the premises. Shortly after the death of Stegelmann and the probate of the nuncupative will, Adolph Stegelmann, Detlof Stegelmann and Christian Stegelmann, brothers of Frederick Stegelmann, deceased, together with their wives, executed and acknowledged certain instruments in writing, each of which recited that they for the consideration of $1, "and in further

consideration of the expressed wish of our late brother, Frederick Stegelmann, deceased, do hereby surrender, set over and assign unto Emma Stegelmann, his widow, all our rights, interest, and title in and to the estate both real and personal, of our said brother Frederick Stegelmann, deceased." These instruments are dated in August, 1894, and were recorded in April, 1896. The widow and her second husband have been in the possession of the premises either by themselves or by tenants since Stegelmann's death. They have paid the taxes, made some slight improvements, kept up the repairs, and enjoyed the rents and profits of the property. The plaintiff alleges that the widow has a life interest in the tracts; that her possession has not been adverse to that of plaintiff and the other heirs, but by consent, based upon her life interest; that the Reifschneiders now claim to be the owners of all the real estate and are attempting to sell and convey the same to other parties; that the conveyances to the husband were without consideration and constitute a cloud upon her title to the premises. She also alleges she has a quitclaim deed from Ernest and Henry Stegelmann and their wives to the real estate, and is the owner of an undivided three-sevenths interest therein, and prays that her title may be quieted to such interest.

The Reifschneiders answer setting up title by the nuncupative will; also a title by open, notorious, exclusive and adverse possession since June 8, 1895, which has been recognized by the plaintiff and the other heirs. The reply pleads that the nuncupative will could not pass the title to real estate; that defendants have recognized the title of plaintiff and the other heirs within ten years; that the plaintiff by such action has been lulled into the belief that the defendants claim to hold only as life tenants, and that defendants are now estopped to set up another title. Cross-petitions were filed by Christian, Adolph and Detlof Stegelmann, each praying that an undivided one-seventh interest in the real estate be quieted in him. The court found that the plaintiff was the owner of an un-

divided three-sevenths interest in the land; that the nun-cupative will was ineffective to pass real estate; that Emma Reifschneider is a life tenant of the lands, and that she and her husband are the owners in fee simple of an un-divided four-sevenths interest. The title to the three-sevenths interest was quieted in the plaintiff, except as to the life estate of Emma Reifschneider. From this decree the Reifschneiders have appealed to this court.

The appellants contend, first, that the title to the real estate passed to the widow by virtue of the nuncupative will; second, that they have good title to the lands by ad-verse possession; third, that the finding that the plaintiff is entitled to a three-sevenths interest in the land is not supported by the evidence.

1. The argument upon the first proposition is more in-genious than satisfactory. Section 4993, Ann. St. 1909, provides: "No nuncupative will shall be good, when the estate thereby bequeathed shall exceed the value of $150 that is not proved," etc. It is argued that the word "be-queathed" in this section is not to be taken according to the technical common law meaning, and that the word "estate" in this section cannot be said to apply to personal estate alone, for the reason that in a number of other sec-tions in the same act the word "estate" is used by the leg-islature as inclusive of all kinds of property. It may be conceded that the word "estate" has been used to embrace within its terms property of all kinds, and that the word "bequeath" may under some circumstances and used in certain connections be held to be sufficient to pass real estate in a will; but these considerations alone we think are not sufficient to justify the court in holding that it was the intention of the legislature to set aside the statute of frauds as to oral wills (which was based upon actual ex-perience of the dangers to estates arising from frauds, and perjuries incident thereto) in seeking to establish nun-cupative wills. By statute this state has adopted "so much of the common law of England as is applicable and not inconsistent with the constitution of the United States,

with the organic law of this territory, or with any law passed or to be passed by the legislature of this territory." Ann. St. 1909, sec. 6955. The temptation to the use of fraud and perjury which led to the enactment of that part of the statute of frauds relating to nuncupative wills (*Cole v. Mordaunt,* in note to *Mathews v. Warner,* 4 Ves. Jr. *196) is just as strong today as centuries ago, and, until the legislature by direct and unequivocal language removes the common law barrier to the transfer of title to real estate by oral wills we must hold that it still exists.

Our attention has not been called to a case from any state, except Ohio, in which it has been held that a nuncupative will is efficacious to pass the title to land. The soundness of that decision is to be doubted, and in that state the statute has since been changed. This court, as well as the courts of this country generally, does not look with favor upon oral testaments. *Godfrey v. Smith,* 73 Neb. 756; *Moffett v. Moffett,* 67 Tex. 642, 4 S. W. 70; Gardner, Law of Wills, sec. 15; Schouler, Wills and Administration, secs. 362, 363; *Prince v. Hazleton,* 20 Johns. (N. Y.) *502; 30 Am. & Eng. Ency. Law (2d ed.) 562, and cases cited in note.

2. As to the issue of adverse possession: At the time of Stegelmann's death the statute provided (Comp. St. 1905, ch. 23, sec. 30): "If he (the intestate) shall have no issue, his estate shall descend to his widow during her natural lifetime and, after her decease, to his father." The widow was also entitled to dower and homestead rights; but, since the statute of descent gave her a life estate in all the property, it is unnecessary to consider what other rights she may have had. Where a person is entitled to the possession of land by virtue of having a life estate therein, his possession will not be construed to be hostile and adverse to that of the remaindermen, unless the knowledge is clearly brought home to them that the person in possession claims the entire title in his own right, adverse and hostile to any claims of interest in the land by the remaindermen or others claiming through

them. We have recognized this principle repeatedly. *Larson v. Anderson,* 74 Neb. 361; *McFarland v. Flack,* 87 Neb. 452; *Helming v. Forrester,* 87 Neb. 438; *Palmer v. Mizner,* 2 Neb. (Unof.) 899. See, also, *Gindrat v. Western R. of Ala.,* 96 Ala. 162, 19 L. R. A. 839, and note.

It is insisted that the recorded deed conveying the entire estate from Mrs. Reifschneider to her husband, the mortgage executed by Reifschneider and wife with full covenants of warranty, and the probate of the nuncupative will were constructive notice to the remaindermen of an adverse claim to the land. The general rule is that the recording of an instrument is only constructive notice to those who claim through or under the person executing the same. *Traphagen v. Irwin,* 18 Neb. 195. The supreme court of California say: "The provisions of recording acts are for the protection of subsequent purchasers and incumbrancers from the common grantor, and do not affect the rights of strangers to the claim of title. *City of Chicago v. Witt,* 75 Ill. 211; *Losey v. Simpson,* 11 N. J. Eq. 246; *Traphagen v. Irwin,* 18 Neb. 195; *Ely v. Wilcox,* 20 Wis. *523; *Long v. Dollarhide,* 24 Cal. 218; 2 Pomeroy, Equity Jurisprudence (3d ed.) secs. 658, 701. Records are only constructive notice of a title of which they enable a party to obtain actual notice or knowledge by means of a search." *Garber v. Gianella,* 98 Cal. 527. See also, *Prest v. Black,* 63 Kan. 682; *Sensenderfer v. Kemp,* 83 Mo. 581; *De Yampert v. Brown & Johnson,* 28 Ark. 166. There was no obligation on the part of the remaindermen to stand guard over the records in order to protect their title. They were entitled to rest secure, so far as acts of the life tenant in possession were concerned, until the fact that she was claiming an adverse and hostile right was effectually brought home to them. It is true that in *First Nat. Bank v. Pilger,* 78 Neb. 169, it is said that the recording of a warranty deed from the widow to one Green was notice to the world "that the grantee claimed an interest in the land such as the deed purported to convey." The facts, however, in that case were that a grantee of the life

tenant went into possession and held possession hostile to the heirs, asserting he owned the entire estate under the deed executed by the life tenant. The case was properly decided, although some of the expressions used in the opinion are not as carefully made as might have been. In the case at bar the evidence is that the plaintiff was under the impression that Mrs. Reifschneider was occupying the premises as a life tenant, and had no knowledge of her claim to be the absolute owner in her own right until shortly before the action was brought. This being the case, we think the statute of limitations had not run at the time the action was begun.

3. It is further insisted that there is not sufficient proof that the plaintiff is the owner of a three-sevenths interest in the premises. It is admitted by the pleadings that she is one of the sisters of Frederick Stegelmann, and that Ernest and Henry Stegelmann, from whom she obtained title by a quitclaim deed, were brothers of Frederick Stegelmann. The quitclaim deed from the brothers to Kate Maurer is also in evidence. Each brother succeeded to a one-seventh interest in the lands of Frederick Stegelmann, subject to the rights of the widow.

So far we have considered only the issues between the plaintiff Kate Maurer and the defendants Reifschneider. Three of the other heirs who were made defendants in the case filed cross-petitions asserting title in themselves against the Reifschneiders, claiming that the instruments by which they released to Mrs. Reifschneider their interest in the estate had been fraudulently procured. The court found upon this issue for the defendants Reifschneider. Some question was made as to the right of these cross-petitioners to have this issue reviewed, since they did not file notice of appeal under the rules of this court. Strictly speaking, they probably have no standing in this court; but, nevertheless, in the course of the examination of the record, we have become convinced that the finding in the district court on this branch of the case was correct.

It is next contended that the plaintiff should be required

to do equity as a condition of the quieting of her title by requiring her to pay into court for the benefit of the life tenant her proportion of the mortgage debt which existed on the premises at the time of the death of the ancestor. We are inclined to think this is just. She should do equity if she receives it. The judgment will be modified so as to require plaintiff as a condition of relief to pay into court for the benefit of the defendants the sum equitably due as her share of the mortgage debt. This may be ascertained by the rule in *Draper v. Clayton*, 87 Neb. 443.

The judgment of the district court is modified and affirmed, and the cause remanded for further proceedings.

JUDGMENT ACCORDINGLY.

SEDGWICK, J., took no part in the decision.