Plomteaux v. Solano, 25 N. M. 24.

---

Finding no error, the judgment of the lower court will be affirmed, and it is so ordered.

PARKER and ROBERTS, JJ., concur.

---

(No. 2180. Aug. 10, 1918.)
## PLOMTEAUX v. SOLANO et al.
(Rehearing Denied Dec. 5, 1918.)

### SYLLABUS BY THE COURT.

The statutory law of this state construed, and held to authorize the disposition of real property by noncupative will.

Appeal from District Court, Santa Fe County; Richardson, Judge.

Nicolas Solano and others presented the noncupative will of Braulia Gonzales de Plomteaux for probate. From an order sustaining the validity of a will, Frank Plomteaux appeals. Affirmed.

A. B. RENEHAN and J. H. CRIST of Santa Fe for appellant.

DANIEL K. SADLER, of Santa Fe, of counsel.

Real estate cannot be devised by verbal will.

Codif. 1915, Secs. 5857; 5861, 4760 Lewis vs. Aylott, 45 Texas, 190; Moffett vs. Moffett, 67 Texas, 642; 4 S. W., 70. Maurer vs. Reifechneider, 89 Nebr., 673; 132 N. W. 197; Am. Ann. Cas. 1912-C, 643 and n. Irwin vs. Rogers, 157 Pac., 690 (Wash.) Smithdeal vs. Smith, 64 N. C., 52; Sadler vs. Sadler, 60 Miss., 251, 10 Ohio 463.

E. P. DAVIES, of Santa Fe, for appellee.

The statutes of New Mexico authorize the transfer of all classes of property by verbal will.

Code 1915, Secs. 5857, 5861, 5862, 5864, 5857; Sec. 1377 C. L. 1884; Browning v. Browning, 3 N. M. 661; Bent v. Thomas, 5 N. M. 408, 138 U. S. 902; Harrison v. Harrison, 155 Pac. 356; Works of Pedro Murillo Velarde Sec. 4771, Code 1915; Sampson v. Bowning 22 Ga. 293; Scales v. Heirs, 118 Ga. 93; Wooldridge v. Hancock, 70 Yex. 18.

## OPINION OF THE COURT.

PARKER, J. Braulia Gonzales de Plomteaux made a noncupative will at Santa Fe on May 5, 1916. She died the day following. By the terms of said will she devised certain real estate, among other things, to designated persons.

The appellant, Frank Plomteaux, her surviving spouse, contested the validity of said will in the probate court for Santa Fe county. An adverse decision was there rendered against him, and thereafter trial de novo was had in the district court for Santa Fe county, which resulted in sustaining the validity of the will. From that judgment this appeal is perfected.

The only proposition of law involved in the case on appeal is whether the laws of this state authorize the disposition, after death, of real estate by nuncupative will. Its solution depends upon the construction to be given to our statutory law on the subject of wills.

The appellant contends that, while a verbal will is declared to be valid by our laws, the Legislature did not use language expressly or impliedly justifying the disposition of real property by verbal will, and consequently a verbal will may dispose of personal property only. The appellee's argument constitutes a complete refutation of the argument advanced by appellant's counsel and is premised upon considerations which would make most, if not all, of the authorities cited by appellant wholly without application in this case.

The state of New Mexico, as its boundaries are now defined, once constituted a part of the kingdom of Spain, and later a part of the republic of Mexico. In 1846, while the said territory was under the military control of the United States government, Brigadier General S. W. Kearny promulgated a code of laws for the government of the then territory embraced within New Mexico. Among such laws was the following:

"Administrations. Sec. 1. The laws heretofore in force concerning * * * wills and testaments, as contained in the treatise on these subjects, written by Pedro Murillo Velarde, shall remain in force so far as they are in conformity with the Constitution of the United States and the state laws in force for the time being." Kearny Code.

The treatise of Pedro Murillo Velarde on the subject of Wills declared the following, which is a free translation of his work written in Spanish:

"By the definition above given we find there are three requirements: First, any person can make his will by writing or by word; second, that it is required of the person making a will that he must be of sound mind; third, there must be maintained in the making of the will all the solemnities that are required by law, and should these be missing the testament is void. The solemnities consist of three essentials: Corroboration of the witnesses, presence of the witnesses and the paper with the corresponding seal. * * * The second solemnity is the presence of the following, for an open or nuncupative testament the presence of attesting witnesses who are residents of the place where the will was made. * *"

He stated that the will might be declared either in writing or verbally. He divided wills into two classes, sealed and open or nuncupative. The later were characterized by him as the more common. He said a nuncupative will was sufficient whenever the testator "so manifests by word of mouth before the witnesses and with the solemnities required by law." See Practica de Testamentos by Pedro Murillo Velarde.

In 1848 the Treaty of Guadalupe Hidalgo was effected between the Republic of Mexico and the United States, whereby the territory now embraced in this state,

together with other territory, was ceded by Mexico to the United States. In 1850 the territory of New Mexico was organized and created by act of Congress.

In 1852 the Territorial Legislature passed a law in Spanish dealing with wills and testaments, among other things. Laws 1851-52, p. 352. The translated sections of that act, material to the proposition under discussion, are as follows:

"Section 1. By testament is understood the expression of the will of a man or woman, who being in possession of a sound mind and entire judgment, provides verbally or in writing, for the disposal of his or her property, rights and titles, with legacies and benefits to his or her heirs, after his or her death.

"Sec. 2. Persons of either sex not otherwise prohibited by law, may make a will, with the exception of the following persons, who are hereby prohibited from making a will, viz.: 1st. Males not having completed fourteen years and females not having completed twelve. 2d. Insane or unsound minded persons. * * * 3d. The prodigal who has received a judicial prohibition. * * * 4th. The deaf and dumb by birth, unless they may be able to declare their will in writing. * * *

"Sec. 3. Any person capable of making a will would do better by making it in writing, than verbally, but a verbal will may be valid, on condition, that in either case, they give it all the validity possible, as well as the freeness of the will, the proof of soundness of mind and entire judgment.

"Sec. 4. The will shall have all the validity required in the previous section. * * *"

In 1876 the Territorial Legislature adopted what is now section 1354, Code 1915. It reads as follows:

"In all the courts of this state the common law as recognized in the United States of America shall be the rule of practice and decision." Chapter 2, § 2, Laws 1875-76.

In 1889 section 2 of the act of 1852 was amended by section 1, c. 90, Laws 1889, so as to read as follows:

"Any person of the age of twenty-one or upwards, and in sound mind, may dispose by will of all his property. * * *"

In 1901, section 1 of the act of 1852 was repealed by section 4, c. 81, Laws 1901. Sections 3, 4, and 5 of the act of 1852 have been carried forward as sections 5861, 5862, and 5864, respectively, Code 1915.

With this statement of the history of various acts material in the consideration of the proposition of law urged by appellant we proceed to a discussion of the merits of the case.

At the outset it must be conceded that within constitutional limitations the Legislature is supreme in the matter of the devolution of property after the death of the owner thereof. It must likewise be conceded that the prime consideration of all courts in the construction of statutes involves the determination of the will of the Legislature as expressed therein. Thereupon it becomes the duty of the court to give effect to the expressed will of the Legislature. Harrison v. Harrison, 21 N. M. 372, 155 Pac. 356, 361, L. R. A. 1916 E, 854. With these axiomatic principles in mind the solution of the proposition is without difficulty.

The Kearny Code adopted the treatise of Pedro Murillo Velarde on the Law of Wills. That treatise was a declaration of the civil law of Spain on the subject, and we apprehend that it constituted a more or less accurate statement of the Mexican law on the subject as it then existed. The inhabitants of the then territory of New Mexico were largely of Mexican parentage, and it would seem but natural to adopt the law of wills which theretofore governed them. The language of the treatise is sufficiently clear to disclose beyond doubt that verbal wills were as efficacious at that time to pass title to real property as were written wills. In fact it appears that the practice of making verbal wills was more common than the practice of executing written wills, which was perhaps due to the lack of the general knowledge of letters. The act of 1852, while subject to criticism in some particulars for lack of definite expression, was declara-

tory of the law theretofore in force in said territory and of the civil law of Spain. Harrison v. Harrison, supra. It carried forward in statutory form the law theretofore in force, without material change. When viewed in the light of the law theretofore in force, no doubt whatever can be entertained as to the legislative intention. Verbal wills were still valid for all purposes for which written wills might be used. Evidently no marked change had occurred from 1846 to 1852 in the general educational qualifications of the inhabitants, at least none sufficiently potent to impress the Legislature with the advisability of destroying the force of verbal wills for the disposition of any and all kinds of property. As section 1 of the act of 1852 simply defined a testament, and as section 2 simply prescribed the qualifications for the making of wills, the repeal of the former section and the amendment of the latter are without influence on the conclusion to be reached.

We have carefully analyzed the cases cited by the counsel for appellant. We have also noted the cases cited by appellee. None, we think, are controlling in this case. An examination of all the authorities on this subject will disclose that but few cases hold that a verbal will may dispose of real estate. The cases holding contrary to the conclusion we reach herein are based upon one or more of the following grounds: That the statute will not be construed so as to work a repeal of that portion of the statute of frauds prohibiting the conveyance of real estate by parol; that the terms of the statutes themselves do not warrant holding a verbal will effectual to dispose of such property; that the statute of conveyances negatives an intent to permit title to real property to be conveyed by nuncupative will; and that nuncupative wills are in general disfavor, and no construction will be indulged in to sustain them where any doubt exists upon the subject.

In Lewis v. Aylott, 45 Tex. 190, the ground of the decision was either that the conveyance statute constituted a barrier to the adoption of the opposing theory,

or that public policy dictated the conclusion. In that case, however, the court said, when the Legislature adopted the provision with reference to nuncupative wills, it "meant to provide for the disposition of that species of property that aforetime might be conveyed by verbal wills," a statement justifying the conclusion to which we have arrived in the case at bar.

In the later case of Moffett v. Moffett, 67 Tex. 642, 4 S. W. 70, the court held that if the Legislature had intended to permit real estate to be conveyed by nuncupative will, it was fair to assume that the Legislature would have used the word "property" when dealing with written wills, as it did when it treated of nuncupative wills, and consequently the court concluded that the word "property" as used in reference to the provision as to nuncupative wills did not include real estate, but was intended to refer only to personal property. It is also evident that the court's decision was prompted by the rule of public policy announced in the former case.

In Maurer v. Reifschneider, 89 Neb. 673, 132 N. W. 197, Ann. Cas. 1912 C, 643, the grounds of the court's decision were that the statute authorizing nuncupative wills to be made exhibited no intention to repeal a portion of the statute of frauds, and that nuncupative wills were unfavorably received in the courts of the country generally.

Irwin v. Rogers, 91 Wash. 284, 157 Pac. 690, L. R. A. 1916 E, 1130, is a well-considered case. It reviews the English history of the law of wills, and concludes that a verbal will is ineffectual to pass title to real estate. The statute under consideration by the court in that case bears some analogy to our statute. Section 1319 provided that all persons over a certain age might devise by last will all of his or her real and personal property. The next section required the will to be in writing, and provided for attestation. The last section (section 1330) provided: "No nuncupative will shall be valid when

the estate bequeathed * * *'' shall exceed a certain value, unless proof of certain conditions were made. The appellant's contention was that the last section did not specifically indicate the character of property subject to disposition by nuncupative will, and therefore resort should be had to the first section of the act, which expressly provided for the devise of both real and personal property, a contention not inapropos in the case at bar. The court said that, where terms which were used in the common law are contained in a statute without any explanation of their meaning or the sense in which they are to be construed, they will receive the construction placed upon them by the common law. The court therefore held that, when the statute was construed in the light of the common law and not in derogation thereof, it was evident that the Legislature did not intend to change the common-law rule as to nuncupative wills, saying that, if it had so intended to change the common-law rule, it would have more clearly expressed its intention. Had that court been construing their statute in the light of the civil law of Spain, which is opposed to the common-law rule, it is fair to assume that the opposite conclusion would have been reached by the court.

The statute in the case at bar is declaratory of the rule theretofore existing in New Mexico, and we would not be free to hold that the statute was in derogation of the former rule, in the absence of a clearly expressed intention to that effect. Other cases are cited by appellant, but they are equally inapplicable to the case at bar.

The enactment of section 1354, Code 1915, in 1876, by which we adopted the common-law rule of practice and decision, did not repeal the act of 1852 or in any wise affect it. Every statute then in force continued in force so far as that enactment was concerned, for the statute was calculated to put in force only so much of the common law of England as was suitable to our conditions and the subject of which was not covered by statute. In other words, the rule of the statute of 1852, viz., that nuncupative wills were effectual to pass title to real estate in

New Mexico, continued to be the law of New Mexico after the passage of the act of 1876, and consequently that portion of the common law contradictory of the right granted by the act of 1852 never became a part of the common law of this state. See Browning v. Browning, 3 N. M. 661, 9 Pac. 677; Bent v. Thompson, 5 N. M. 408, 23 Pac. 234; Id., 138 U. S. 114, 11 Sup. Ct. 238, 34 L. Ed. 902. In the latter case the Supreme Court of the United States said:

"By section 1823, Compiled Laws 1884, adopting the common law in 1876, as the basis for the jurisprudence for the territory, it was not intended thereby to repeal the statute laws, but only to adopt so much of the common law as did not conflict therewith."

From the foregoing it follows that we did not adopt such part of the statute of frauds as may be said to be contradictory of the statute of 1852. The statute on Conveyances, being section 4757,. Code 1915, has no application to this case. It has to do only with conveyances inter vivos.

We therefore hold that the statutory law of this state authorizes the disposition of real estate by nuncupative will.

For the reasons stated the judgment of the trial court will be affirmed; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.