[No. 3487.   Decided May 22, 1900.]

JOHN R. SMITH, *Appellant,* v. NORTHERN PACIFIC RAILROAD COMPANY *et al., Respondents.*

VENDOR AND PURCHASER—LAND CONTRACT—FORFEITURE—RIGHTS OF
  MORTGAGEE OF PURCHASER'S INTEREST.

Although a contract for the sale of land may provide that the time of payment of installments falling due is of the essence of the contract, and that no interest in the contract less than the whole can be assigned, yet the action of the vendor constitutes a waiver of both conditions, when he agrees to an extension of time for the deferred payments, having knowledge at the time of such extension that a partial interest in the contract had been assigned by the original purchaser; and, under such circumstances, the vendor cannot enforce a forfeiture of the contract without giving notice to a mortgagee of such partial interest, the existence of whose lien was known to the vendor prior to any attempted forfeiture.

SAME—ACTS OF EXECUTOR RESPECTING TESTATOR'S INTEREST IN CON-
  TRACT—PRESUMPTIONS.

Where one of the purchasers under a contract for the sale of land died, after having given a mortgage upon his interest, and his executor was a party to an agreement whereby the contract was declared forfeited and a new contract effected between the vendor and a portion of the purchasers, with the object of shutting out some of the purchasers under the old contract, pursuant to which agreement a conveyance was eventually to be made to the executor in his own name of a portion of the

premises equivalent to the interest held by his testator, the presumption arises that the executor was acting in the interest of his testator's estate, and the lien of the mortgage upon the interest of the testator would continue against the premises under the new agreement.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

*William T. Birdsall* and *R. L. Edmiston,* for appellant:

"It is laid down as a general principle that a condition which, if taken advantage of, destroys the whole estate, if once dispensed with, in whole or in part, is gone forever, for a condition being an entire thing cannot be apportioned except by act of law." 2 Washburn, Real Property (5th ed.), p. 20; *Sharon Iron Co. v. Erie,* 41 Pa. St. 341; *Williams v. Dakin,* 22 Wend. 201; *Kent v. Church of St. Michael,* 136 N. Y. 10 (32 N. E. 707, 32 Am. St. Rep. 693, 18 L. R. A. 331); *Raymond v. San Gabriel Land Co.,* 53 Fed. 883; *Merriam v. Goodlett,* 54 N. W. 686; *Miller v. Cox,* 31 Pac. 161; *Faxton v. Faxon,* 28 Mich. 159. Waiver of performance or extensions of the time thereof, in case of a condition precedent, is equivalent to performance at the stipulated time. *Barton v. Gray,* 57 Mich. 623.

"A mortgage made by one who holds only a bond or contract of purchase passes the title which he has in the premises at the time, subject to being enlarged by the mortgagor's acquiring the legal title. Such a mortgagor has a mortgagable interest. The mortgage amounts to a qualified assignment of the bond or contract. If the bond or contract be executed formally, so that they may be recorded, the record is notice to any subsequent purchaser of the vendor, of the mortgagee's right to purchase the property under the contract, if the vendee does not per-

form the condition of the mortgage." *Alden v. Garver,* 32 Ill. 32; *Steinkemeyer v. Gillespie,* 82 Ill. 253; Jones, Mortgages, § 172; *Thredgill v. Pintard,* 12 How. 24 (13 L. ed. 877). "The vendor and the vendee cannot rescind the contract as against such mortgagee after the vendor has actual notice of the mortgage." Jones, Mortgages, § 172 *et seq.; Brush v. Waré,* 15 Pet. 111 (10 L. ed. 672) ; 2 Washburn, Real Property (5th ed.), p. 90, § 8; *Alden v. Garver, supra.*

The interest now standing in the name of Benjamin Rosenstein under his deed from the Northern Pacific Railway Company is held subject to plaintiff's mortgage, and such mortgage is a first lien on the undivided one-fourth thereof, equivalent to and being the one-eighth covered by the mortgage, and plaintiff is entitled to judgment of foreclosure and sale of said eighth. He holds all that he holds in excess of his original one-eighth, as the trustee of his original co-tenants whose interests are not represented in the deed. *Dray v. Dray,* 27 Pac. 223; Pomeroy, Equity Jurisprudence, § 155; *Phipps v. Phipps,* 27 Pac. 972; *Emeric v. Alvarado,* 27 Pac. 356; *Delashmutt v. Parrent,* 18 Pac. 712; *Mills v. Hart,* 52 Pac. 680 (65 Am. St. Rep. 241); *Hodgson v. Fowler,* 50 Pac. 1034; *McGranighan v. McGranighan,* 39 Atl. 951; *Cecil v. Clark,* 30 S. E. 216; *Moreland v. Strong,* 73 N. W. 140 (69 Am. St. Rep. 553); *Huling v. Abbott,* 25 Pac. 4.

*Samuel R. Stern* and *Stephens & Bunn,* for respondents.

The opinion of the court was delivered by

GORDON, C. J.—There are two causes of action set up in the complaint,—the first being to foreclose a mortgage upon distinct parcels of real estate; the second, to set aside an alleged fraudulent conveyance of one of the tracts, and to adjudge the holder of the legal title to be a trustee for

a one-eighth interest. As to the latter cause of action, it appears to have been abandoned at the trial, and the real controversy was waged over the right of plaintiff to foreclose as to one of the tracts.

From the undisputed facts it appears that in January, 1892, one Simon Oppenheimer executed and delivered to Laura Winne four promissory notes, each for the sum of $5,000, bearing interest at ten per cent. per annum. These notes were due in one, two, three, and four years after date; and, to secure their payment Solomon Oppenheimer (since deceased) and Harriet Oppenheimer, his wife (being the parents of Simon), executed and delivered a mortgage which included, among other property, an undivided one-eighth interest in and to the north half of the northeast quarter and the southeast quarter of the northeast quarter of section 25, township 25 north, of range 42 east, Willamette meridian, except nineteen acres contained in the right of way. The mortgage was duly recorded. The first and second of the notes were paid, and, prior to the maturity of the third one to mature, they were transferred to the plaintiff, and the mortgage securing them was duly assigned. Solomon Oppenheimer died in this state on the 12th of September, 1892, leaving a will in which Harriet Oppenheimer, the wife, and Simon, the son, were appointed executrix and executor thereof, and they thereafter duly qualified. The premises in question were, prior to August, 1889, owned by the defendant, the Northern Pacific Railroad Company, a corporation. On the 28th of that month the railroad company made and executed a certain land contract to one Lucius B. Nash, wherein and whereby, in consideration of certain payments thereafter to be made, aggregating $11,615, it undertook and agreed to convey the premises to Nash, and thereafter Nash, by instrument in writing duly executed, on the 3d day of Sep-

tember, 1889, assigned his interest in said contract to Horace E. Houghton and others, said Houghton taking under said assignment a one-fourth interest therein. This assignment was duly recorded, as was the original contract of sale.. Thereafter, by a similar instrument in writing, dated the 11th of September, 1889, and duly recorded, Houghton transferred and assigned his one-fourth interest in and to the contract to Solomon Oppenheimer and respondent Benjamin Rosenstein, each of whom became the owner of an undivided one-half interest in the one-fourth interest so transferred. Of the remaining interest, one-fourth was transferred to one E. J. M. Hale, and the remaining one-half to defendants Stellwagen and Harban. The court found that due notice of the assignment to Solomon Oppenheimer and respondent Rosenstein was given to the railroad company before the execution of the mortgage, and was duly entered upon its books, and that due notice of the execution and recording of the mortgage was given to the railroad company on the 9th day of January, 1892, and also duly entered on its books. The land contract referred to called for the payment of $2,615 at the time of the execution of the contract, which sum was paid. It also provided for the payment of $4,500 on the 28th of August, 1890, and the remaining $4,500 on the 28th of August, 1891, containing the condition

"that should default be made in the payment or in any of the payments of the principal or interest aforesaid, at the time or any of the times above specified for the payment thereof, or in case the party of the second part shall fail to pay the taxes or assessments upon said lands as hereinbefore agreed, then and in such case this agreement, *at the option of said party of the first part,* shall be null and void, and no longer binding on the party of the first part, and all of the payments that shall have been made under this agreement on the said land, and all the buildings and improvements on said lands shall be and forever

remain the property of the party of the first part, its suc-
cessors or assigns,   .   .   .   it being. expressly under-
stood and agreed that time is of the essence of this con-
tract, and that the performance of each and every of the
covenants and agreements of the party of the second part
hereinbefore contained is as much a part of the considera-
tion of this contract and a condition precedent, as the pay-
ment of the purchase money aforesaid."

Also, the following:

"And it is mutually covenanted and agreed that in case
default shall be made by the party of the second part in
any of the covenants or agreements herein contained to be
performed by him, the party of the first part shall see fit
to declare this contract null and void by reason thereof,
such declaration may be made by notice from the party of
the first part, addressed to the party of the second part,
directed to the postoffice named below and deposited in the
postoffice at Tacoma, Washington, which shall constitute a
good and sufficient notice and service thereof."

Also:

"And it is further agreed that no sale, transfer, assign-
ment, or pledge of this contract, or of any interest therein,
.   .   .   shall in any manner   .   .   .   relieve the
original purchaser or purchasers from the obligations im-
posed by this agreement.   And it is also further agreed
that no assignment or transfer of any interest of, or in this
agreement or the said premises, less than the whole, shall
be recognized or admitted by said party of the first part
under any circumstances or in any event whatever."

In addition to the payment made at the date of its exe-
cution, the payment of $4,500 and interest maturing
under the terms of the contract on August 28, 1890, was
duly paid prior to the time of the execution of the mort-
gage.   The court also found that, prior to the maturity of
the contract, by the terms thereof the railroad company,
by instrument in writing, extended the payment of the
contract for one year, and in the month of August, 1892,

in consideration of the payment of the interest accruing on the balance remaining unpaid, further extended payment on the balance due on the contract until August 28, 1893, and thereafter, by a similar instrument in writing for a similar payment, extended the payment of the balance of the principal remaining unpaid another year, or until the 28th of August, 1894; that in November, 1894, an agreement was made between Simon Oppenheimer, respondent Rosenstein and defendants Harban and Stellwagen, of the one part, and the railroad company of the other part, whereby it was verbally agreed that time for the payment of the balance remaining unpaid was to be extended three years, and the principal remaining unpaid thereon was to be paid in three annual payments, the first to be $1,745, and "that because of the alleged inability of one of the contracting parties, to-wit, the assignee E. J. M. Hale, to keep up his payments on the one-fourth interest held by him, notices were to be given by said land agent of the Northern Pacific Railroad Company, professing to cancel said contract 584 [that being the number of the land contract referred to], and a new contract was to be made on behalf of the railroad company with some stranger to the transaction, as professed trustee of said Harban and Stellwagen jointly representing the half interest, . . . and Oppenheimer and Rosenstein, professing to represent the other half interest therein; but whether the new professed contract was to be to the estate of Solomon Oppenheimer, deceased, does not appear. It does, however, appear that Simon Oppenheimer, signing his name as S. Oppenheimer, had at all times previous thereto represented the interest in said contract 584, which had been assigned to Solomon Oppenheimer." The court also found: "That such agreement was brought about at the instance and request of the said Simon Oppenheimer and

Benjamin Rosenstein." And that in pursuance of such arrangement the railroad company caused notice to be given to Harban, Stellwagen, Simon Oppenheimer, and Rosenstein, on the 18th. day of November, 1894, professing to state that all payments of principal and interest on said contract were in arrears since August 28, 1891, and required that the same should be paid on or before November 30, 1894, and stating that in case of non-payment, the contract would be canceled; and on the day that said notices were so given the railroad company accepted, in writing, the proposition contained in the finding above set out, wherein the old contract was to be canceled and a new one made to a trustee for the benefit of all of those interested in the old contract, with the exception of Hale. On December 31, 1894, the railroad company caused an additional notice to be given, which notice professed to declare contract 584 canceled in consequence of non-payment. The court found that Simon Oppenheimer was not able to carry out his part of the new agreement with the railroad company, whereupon Rosenstein should take an undivided one-half of the land, and Oppenheimer should, when able to pay therefor, purchase from him one-half of his interest. A new contract was entered into between the railroad company and M. M. Cowley, as trustee for the purchasers. This last mentioned contract was in pursuance of, and upon the terms of, the agreement hereinbefore mentioned. That in May, 1895, upon request of Simon Oppenheimer, respondent Rosenstein submitted a statement of the amount due from Simon to respondent under the new agreement, and this amount was paid by Simon to Rosenstein on the 18th of June, 1895, the amount so paid being a sum equal to a quarter of the total sum paid under the new agreement, viz., one-fourth of $1,745; and at about the same time Simon paid one-half

the taxes upon the land mentioned in the contract. No
further sum has been paid by Simon Oppenheimer, and
subsequently the last mentioned contract was further mod-
ified, the particulars of which modification, however, need
not be here stated. In November, 1897, the respondent
Northern Pacific Railway Company, having succeeded to
all of the interest of the Northern Pacific Railroad Com-
pany in the property, caused a deed to be executed to the
premises in question, to respondents Rosenstein, Stell-
wagen and Harban, in the proportion of an undivided one-
half thereof to Rosenstein and an undivided one-half
thereof to Stellwagen and Harban, which deed was subse-
quently recorded; and in this connection the court found
that "said deed was executed because of the payment of
the balance of the money so agreed to be paid *in said con-
tract 584.*" The court also found that Cowley was a mere
trustee and paid no part of the purchase price from his
own resources, of which fact the railroad company and
railway company had full notice. The court further found
that neither the appellant nor his assignor had any knowl-
edge or notice of any of the transactions between the rail-
road and railway companies and Rosenstein and Oppen-
heimer, or of any sum remaining unpaid on the original
contract, "or of any demand or any payment thereon, or
any threatened or actual cancellation thereof, or of any of
the subsequent transactions set forth in the findings; but
that, on the contrary, in the months of July and August,
1896, and more than three months prior to the making of
the professed new contract, the Northern Pacific Railroad
Company had actual notice of the continued existence and
lien of said mortgage, and executed said new agreement
after having acquired said knowledge, in defiance thereof."
Upon the facts found the court concluded, as matter of
law, "that the railroad company had the right to forfeit

the contract, and to sell the property for the balance that was due thereunder to part of the persons who were interested in the original contract, and they had the right to buy it."

We think the learned trial court erred in thus concluding. The facts warranted a decree in plaintiff's favor. The theory that the original contract was forfeited prior to the execution and recording of plaintiff's mortgage has no firm basis upon which to rest. The conclusion is inconsistent with the findings, the court having expressly found that, after default was made under the terms of the original contract, the railroad company from time to time extended the time of payment, and received annual interest payments thereupon; and in this way the contract was continued in full force and virtue for a long period after the attaching of the lien of plaintiff's mortgage. The acceptance of these interest payments was sufficient in itself to keep the contract alive, even if it were not true, as found by the court, that agreements for extensions were entered into. The law does not favor forfeitures, and will seize upon any circumstance, however slight, to prevent the enforcement of a forfeiture. The acceptance of these interest payments and the other acts of recognition of the contract are absolutely inconsistent with the notion that the company had elected to claim the benefit of the forfeiture clauses. As above noticed, the mortgage under which the plaintiff claims was recorded on the 9th day of January, 1892. No notice of an election to declare the contract forfeited was given prior to November, 1894. The provision of the contract against the assignment of an interest less than the whole was waived when the company saw fit to recognize such assignment, and thereafter to deal with the parties in distinct recognition thereof; and, having actual notice of the existence of plaintiff's mortgage prior

to any attempt upon its part to declare a forfeiture, the mortgagee was entitled to notice of the pretended subsequent election of the company to terminate it. No such notice has ever been given or attempted.

But, entirely apart from these considerations, the court having found that the new contract which culminated in a deed was conceived and brought about by Simon Oppenheimer presumably in the interest of his father's estate, the lien of the mortgage upon the interest of Solomon Oppenheimer in the premises continued under the new agreement and has never been forfeited or lost. Viewed from any standpoint, but one conclusion can be reached, and that is that plaintiff was entitled to a decree of foreclosure, and the defendant Rosenstein was entitled to have the sum due him from Simon Oppenheimer as executor, under the agreement between them, adjudged a first lien, to be preferred to plaintiff's mortgage. Plaintiff tendered such an accounting in his complaint. The defendant did not see fit to avail himself of it, but, after full consideration, we are disposed, in reversing the decree, to remand with direction to the lower court to permit such an accounting to be made, and to proceed to a decree in conformity with this opinion. In disposing of this case, we have considered that Simon Oppenheimer, in all of his dealings with the premises in controversy, was acting as the executor of his father's will. It is not material that the court was unable to find as a fact whether he so acted, or acted upon his own account. It is enough to know that the law made it his duty to conserve the interest of the estate of which he was executor, and it would be monstrous to permit him to assert an interest or claim hostile to that of the testator. No such claim or assertion is made by him, however. In fact, although made a party to the present action, he has not appeared therein. The plaintiff having

abandoned his second cause of action, the railroad company should have been dismissed upon its disclaimer of interest, and no costs will be taxed against it.

Reversed and remanded accordingly.

DUNBAR, FULLERTON and REAVIS, JJ., concur.