IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2005 Session

# EDWARD LEE BURCH v. McKOON, BILLINGS & GOLD, P.C., ET AL.

**Appeal from the Chancery Court for Sequatchie County**
**No. 1962    Jeffrey F. Stewart, Chancellor**

---

**No. M2004-00083-COA-R3-CV - Filed August 31, 2005**

---

This is an action to quiet title filed by the grantor against an assignee of the grantees relative to an installment land contract. Remote grantees of the grantor were joined as third party defendants by the original defendant/assignee relative to portions of the land involved in the installment land contract and held by the third party defendants under deeds from the grantor. The trial judge granted summary judgment to the grantor and against the assignee of the grantees in the installment land contract. He further granted summary judgment to the remote grantees of the grantor in the third-party action by the assignee against them. The assignee appeals, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

James R. McKoon, Chattanooga, Tennessee, for the appellants, McKoon, Billings & Gold, P.C.

William M. Foster, Chattanooga, Tennessee, L. Thomas Austin, Dunlap, Tennessee, and Stephen T. Greer, Dunlap, Tennessee, for the appellees, Charles B. and Kathleen R. Chappelle, Edward Lee and Elizabeth Burch and Christopher S. and Ginger Barker Mills, respectively.

**OPINION**

The chronology of events is crucial to the determination of this case. In the order in which the events occurred:

1.    The Installment Land Contract between Burch and Ridley was executed and recorded in 1995.
2.    The Deed of Trust from the Ridleys to secure an indebtedness to McKoon, Billings & Gold, P.C. ("MB&G") was executed and recorded in 1999.

3. The Deed from Burch to Mills conveying 10.12 acres of the 108.82 acres involved in the Installment Land Contract was executed and recorded in 2000.
4. The Deed from Burch to Chappelle conveying to Chappelle six (6) acres of the land subject to the Installment Land Contract was executed and recorded in 2001.

The record on appeal does not favor us with the reasoning of the Chancellor in granting summary judgment. Such omission however is not fatal to an appeal since a trial court grant of summary judgment presents only issues of law on appeal and is thus reviewed *de novo* with no presumption of correctness. *Guy v. Mutual of Omaha Insurance Company*, 79 S.W.3d 528 (Tenn.2002); *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn.1995).

The familiar standard for review of summary judgment is set forth at length in near countless numbers of reported cases led by *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993). It suffices to say that courts must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Summary judgment should be granted only when the facts and conclusions to be drawn from those facts permit a reasonable person to reach but one conclusion. *Carvell*, 900 S.W.2d at 26 (Tenn.1995).

Appellant asserts four (4) issues on appeal, same being:

1. Whether the Chancellor erred in ruling that the 14th Amendment to the Constitution of the United States and the "Law of the Lands" clause of the Tennessee Constitution did not require Mr. Burch to notify McKoon, Billings and Gold, P.C. ("MBG"), holder of a recorded deed of trust and attorney's lien, of an action affecting title to the subject real property.
2. Whether the Chancellor erred by not addressing the issue of whether Mrs. Ridley was properly served when the return of service indicates that Mrs. Ridley was not served.
3. Whether the Chancellor erred in ruling that the Ridleys' had no interest in the property against which MBG could enforce its deed of trust and attorney's lien.
4. Whether the Chancellor erred in refusing to consider the equitable interest the Ridleys (and derivatively MBG) acquired in the subject real property by virtue of the extensive improvements made to and money invested in the subject real property.

The controlling question in the case does not involve the existence of an equitable interest in MB&G but rather a determination of exactly what that equitable interest is. It is elementary that the Ridleys could convey to MB&G by Deed of Trust no greater interest, legal or equitable, in the property than that which they possessed by virtue of the Installment Land Contract between themselves and Burch.

Headnote 4 of *Williams v. Love*, 39 Tenn. p.80 (Tenn.1858) states the rule:

A purchaser of an equitable title must always abide by the case of the person from whom he buys. And if a person thus having an equitable interest in land, sell or mortgage the same, or his interest is attached by a creditor, the purchaser, mortgagee, or creditor, takes it incumbered with the equity existing against him.

As the Tennessee Supreme Court said in a similar context:

The complainant, Woodard, guardian, stands on no better ground. Wisdom was after his transfer only the owner of an equity in these securities. This is what he transferred, and all he could transfer, in his settlement with complainant; and the rule is that a purchaser of an equitable title must always abide by the case of the person from whom he buys.

*Woodard v. Bird*, 59 S.W. 143, 147 (Tenn.1900).

Thus a grantee of limited rights conveying only his equitable interest in trust to secure an obligation is in the same position as an assignee when executing a conveyance of his interest in trust or otherwise. He can secure his creditor as far as the property conveyed in trust is concerned to no greater extent than the equitable interest of which he was possessed.

This Court has held:

The general rule of the common law as stated in American Jurisprudence is:

As a general rule, an assignee takes the subject of the assignment with all the rights and remedies possessed by or available to the assignor. However, an assignee of a nonnegotiable chose in action generally acquires no greater right than was possessed by the assignor, and simply stands in the shoes of the assignor. Thus, the assignee is subject to any defense that would have been good against the assignee (sic); the assignee cannot recover more than the assignor could recover, and the assignee never stands in a better position than the assignor.

6 Am. Jur. 2D *Assignments*, § 144 (1999).

This rule in Tennessee dates at least from 1817 as established by *Kennedy v. Woolfolk*, 4 Tenn. (3 Hayw) 195 (1817), wherein Woolfolk, assignee of Bryant, was sued by Kennedy on the purchase money debt originally owed by Bryant. Said the supreme court:

Neither can it be urged successfully that Woolfolk is not liable to the demand of Kennedy, in the same manner as Bryant was. He has taken the place of Bryant by purchasing his equity. What is that? To be liable to a specific execution as well as to be entitled to one. Kennedy had a right to say take your land and pay me the

-3-

purchase-money. Bryant could not say, convey me the land and wait for the purchase-money till it suits my convenience to pay you, or run the risk of my insolvency and that of my surety. Can Bryant, by assignment, place Woolfolk in a situation which he himself could not occupy? Can he and Woolfolk . . . in the absence of Kennedy, make an agreement which could, in any degree, abridge the existing right of Kennedy? . . . Here, most clearly, Woolfolk knew of all the material circumstances relating to this transaction, and that undoubtedly subjects him to all of the equity that Bryant was subject to.

*Kennedy*, 4 Tenn. (3 Hayw) at 199.

In *Third National Bank v. Capitol Records, Inc.*, 445 S.W.2d 471 (Tenn.Ct.App.1969), the bank, in order to secure a $4,000 loan to a country and western singer using the stage name "Bobby Edwards," took an assignment from Capitol Records, Inc. of all royalties due from Capitol to Edwards under a recording and royalty contract. Capitol agreed to the assignment and agreed, under the provisions of the assignment, to make royalty payments directly to the bank. In the contract between Capitol and Edwards, however, Capitol was entitled to deduct recording costs before paying royalties. As it happened, these recording costs exceeded the royalties due Edwards, and there was nothing left for Capitol to pay the bank. In the ensuing suit by the bank against Capitol Records, the court applied the time honored rule and held: "The complainant, bank, took the assignment of such contract subject to all of the provisions thereof including provision four which authorized the defendant to deduct such recording cost from royalties earned by [Edwards]." *Third Nat'l Bank*, 445 S.W.2d at 477; *see also Pac. E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946 (Tenn.Ct.App. 1995); *Binswanger S. (N.C.), Inc. v. Textron, Inc.*, 860 S.W.2d 862 (Tenn.Ct.App. 1993).

*Child Bride Music, Inc. v. Jackson, et al.*, 2004 WL 911310 *4 (Tenn.Ct.App.2004) *perm.app.denied* (Tenn. Nov. 22, 2004).

The Installment Land Contract between Edward Lee Burch as seller and Johnny Lamar Ridley and wife Jennifer Lynn Ridley as buyers was dated July 7, 1995, and executed by all parties on that same date. This Installment Land Contract was recorded in the Registers Office of Sequatchie County, Tennessee on July 12, 1995, and appears of record in miscellaneous book 45, page 150 in the registrar's office.

The Deed of Trust from the Ridleys to Tri-State Title Company, LLC as trustee to secure the indebtedness to M.B. & G. was executed July 28, 1999, and purports to convey in trust fee simple title to the 108.82 acres involved in this case. At no place in the Deed of Trust is the Ridley's source of title disclosed, and, indeed, no mention is made in the Deed of Trust of the Installment Land Contract between Burch and Ridley that delineated the only right and title that the Ridleys ever possessed in the property.

It is necessary, first, to analyze the Installment Land Contract for the purpose of determining exactly what the rights and responsibilities of Lamar and Jennifer Ridley were.

The Installment Land Contract provides in pertinent part:

2. TERMS: The purchase price for said real estate is Four Hundred Twenty-Seven Thousand Two Hundred Eighty and no/100 ($427,280.00) Dollars which purchase price shall be payable as follows: Buyers have previously paid $2,500.00 to Seller as a down payment, an additional $17,500.00 down payment will be made upon the execution of this contract, with the balance of $407,280.00 being payable by Buyers to Seller in 15 equal annual installments of $41,482.37 each, with the first annual installment being due and payable on July 7, 1996, and a like installment being due and payable on the 7th day of July of each year thereafter for a total of fifteen years, and a final balloon payment of $178,377.14 due and payable the sixteenth year, July 7, 2011, including interest at 8% per annum from date, with interest first deducted and the balance credited to principal. Payments shall be made to Seller at the address as set out in the premises hereof, or at such other address as Seller may notify Buyers in writing.

3. POSSESSION: Possession shall be delivered to the Buyers upon the execution and delivery of this Contract. Buyers agree that upon taking possession of said real estate that they will not cause or allow the same to be encumbered in any manner whatsoever, and that no material or labor liens or other statutory or common law liens shall be allowed to become an encumbrance on the subject property. In the event that any such lien or liens shall become an encumbrance on the subject property, Buyers agree to promptly discharge and satisfy said liens within thirty (30) days of the date said property becomes so encumbered.

4. TAXES: Upon receipt of the 1995 tax assessment the real estate taxes on the subject property shall be prorated for the year of 1995 from the date of this Contract, which shall require Seller to pay to Buyers 52% of the tax assessment for the full 108.82 acres described in Exhibit A. All prior years' taxes shall be the responsibility of the Seller. Buyer shall be responsible for taxes for the balance of 1995 and thereafter.

5. WARRANTY BY SELLER: Seller hereby warrants and represents that he is the true and lawful owner and holder of said real estate, that he has a good and lawful right to enter into this contract as Seller of said real estate and that the same if free, clear and unencumbered, except for the 1995 real estate taxes not yet due and payable, and except for a prior encumbrance as reflected by a certain Deed of Trust in favor of Citizens Tri-County Bank, being dated 1/25/94, and recorded in Trust Book 99, Page 23, Register's Office of Sequatchie County, Tennessee. The parties acknowledge that Seller has made Buyers fully award of the existence of said prior

mortgage, and Seller hereby agrees to continue paying all mortgage payments under said mortgage in a prompt and timely manner and to reduce and satisfy said mortgage entirely on or before the termination to payments due from the Buyers to the Seller as set forth herein. In the event, however, that Seller defaults in the payment of said mortgage, and the Buyers pay all or any amount of said mortgage on behalf of Seller, then all such payments made by Buyers on said mortgage shall constitute a credit upon the purchase price due from the Buyers to the Seller as set out in this Contract.

. . .

8. <u>EXECUTION OF WARRANTY DEED</u>: At such time as all of the payments owed to the Seller from the Buyers have been fully made and satisfied as set forth herein, Seller will within thirty (30) days thereafter cause to be made and executed the Buyers a general Warranty Deed conveying the subject property to the Buyers, with such general Warranty Deed to contain the usual covenants of seisin and general warranties of title, subject however, to the restrictions set out herein in Paragraph 8.

9. <u>DEFAULT BY BUYERS</u> The parties agree that one or more of the following events will constitute a default on the part of the Buyers:

(a) Any installment due herein remains unpaid for a period of thirty (30) days from the date due;

(b) Any liens or encumbrances that are placed against said property through Buyers are not satisfied within a period of thirty (30) days from the date the same becomes encumbered;

(c) Breach of any other provision in this Contract required to be performed by the Buyers, which is not corrected within thirty (30) days after notice thereof from Seller.

In the event the Buyers default in any of these obligations above specified, Seller shall have the right to declare the total remaining amount immediately due and payable, and upon notice of the same by Seller to the Buyers of his election to so declare the remaining balance due and in the event that the total remaining balance is not paid within thirty (30) days after such notice of acceleration, then this Contract may be declared null and void by the Seller. In such event, the amounts paid hereon by the Buyers to the Seller may be retained by the Seller as consideration for the making of this Contract and as liquidated damages. Thereafter, Seller shall be released from any and all other obligations, at law or equity, to convey said real estate, or any part thereof, and any occupancy of said real estate thereafter by the Buyers, or their assigns, shall be deemed a tenancy at will of the Seller.

10. <u>NOTICES</u>: Any and all notices required to be given herein shall be deemed to have been given when provided for in writing by personal delivery, or by deposit in the regular U.S. Mail, registered or certified, return receipt requested, addressed to the party to whom is entitled notice at their address as shown in the beginning of the Contract, or to such other address as the parties may hereafter advise in writing.

When the Ridleys defaulted in payments under the Installment Land Contract, Edward Lee Burch executed and recorded a Declaration of Default by the Ridleys which was recorded on November 19, 1999. Suit was then filed in the Chancery Court for Sequatchie County by Burch against Johnny Lamar Ridley and wife Jennifer Lynn Ridley seeking a court declaration that the Installment Land Contract was of no further force and effect and that the Ridleys possessed no further equitable interest in the property. The Ridleys did not answer the Complaint and default judgment was rendered against them on July 24, 2002, from which no appeal was taken.

While the Deed of Trust securing MB&G purports to convey fee simple title in trust, it is undisputed that the Deed of Trust conveys only the equitable interest in the property possessed by the Ridleys pursuant to the Installment Land Contract between Burch and the Ridleys.

The case is before this Court on appeal from the grant by the trial court of a summary judgment in favor of Burch. There are no depositions in the record, no transcript of evidence and no Tennessee Rule of Appellate Procedure 24(d) Statement of Evidence. While the technical record contains the Final Judgment of Chancellor Stewart granting the summary judgment, we are not favored with his specific findings which were attached to his Final Judgment as an exhibit but were not preserved for the appellate record. Nonetheless, the affidavits of the parties and the documents appended to such affidavits and the summary judgment motion provide a sufficient basis for determining the case.

In his affidavit, Edward Lee Burch states:

At the time of the declaration of default, as well as at the time of the institution of the court proceeding to enforce the declaration of default, I had no knowledge of the existence of the Deed of Trust of MB&G  In fact, the latest notice I had received from MB&G came from Barry L. Gold by way of his letter of November 9, 1999, to me which is attached hereto and incorporated herein.

This assertion of fact is undisputed.

The letter from Barry Gold dealt entirely with the guilty plea of Lamar Ridley in federal court to one count of mail fraud and his sentencing hearing which was set for November 19, 1999. In the letter, Gold requested from Burch a letter in support of Lamar Ridley for use in his sentencing hearing. No mention is made in this letter of the controversy relative to the property in issue.

-7-

As the lack of actual knowledge of Burch of the existence of the Deed of Trust from the Ridley's to secure MB&G is undisputed, we turn next to constructive notice and any equitable considerations that might be evidenced by the record before the Court.

Nothing in this record provides constructive notice to Burch of the existence of the Deed of Trust from the Ridley's to MB&G The Land Contract between Burch and Ridley was recorded July 12, 1995. The Deed of Trust from the Ridley's to Tri-State Title Company, LLC, trustee, was recorded July 30, 1999. The Deed of Trust is not in the Burch chain of title. It is undisputed that the Deed of Trust is a recorded instrument under Tennessee Code Annotated section 66-24-101. The effect of such registration is:

> **66-26-102. Notice to all the world.** — All of the instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such time.

The seemingly all inclusive phrase "notice to all the world" is misleading. Persons whose recorded interests in the property predate rather than postdate the recorded instrument in question do not form a part of the "world." In construing a similar statute, the Supreme Court of New Mexico held:

> Section 71-2-2 is rather unique in its sweep in imputing notice to "all the world," although various courts, apparently in the throes of impulses to generalize, have made similar statements. Courts and writers have then been required to consider whether "all of the world" or "the whole world" really means what it says. An examination of this material fairly well destroys the idea that it does. For example:
>
> > "Recording acts were passed for the purpose of providing a place and a method by which an intending purchaser or encumbrancer can safely determine just what kind of title he is in fact obtaining." 45 Am.Jur., Records and Recording Laws, § 29.
> >
> > "The general policy of the law relating to titles to land is to protect bona fide purchasers against loss from secret liens not disclosed by any public record not ascertainable by due diligence." * Thompson, On Real Property, § 4291 at 227 (1963 repl.).
> >
> > " * * * [T]he universal rule is that the record of an instrument is constructive notice to subsequent purchasers and encumbrancers only, and does not affect prior parties * * *." 45 Am.Jur., supra, § 89, citing Armstrong v. Ashley, 204 U.S. 272, 27 S.Ct. 270, 51 L.Ed. 482.

"The proposition is frequently announced that under the recording statutes, the proper record of an instrument authorized to be recorded is notice to all the world. But this means simply that the record is open to all, and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. It is not a publication to the world at large. Those who, by the terms of the recording laws, are charged with constructive notice of the record of an instrument affecting land are, therefore, those who are bound to search the records for that particular instrument." Id., § 86.

Section 71-2-2 must be considered with § 71-2-3 with which it is in parimateria. Obviously constructive notice to all the world cannot mean precisely that; it must be interpreted, defined and limited by the courts. Having done this, we are convinced that our recording statutes ought to be held to have the same purpose and meaning as those of most other jurisdictions, viz: that they are intended to protect those having subsequent dealings with the property, and that the record imputes notice only to those who are bound to search for it.

*Romero v. Sanchez*, 492 P.2d 140, 143-44 (N.M.1971).

The Supreme Court of Washington in the context of a case involving a constructive trust in respect to certain real and personal property stated the rule:

Furthermore, the deed to that company did not constitute constructive notice to appellant, since she was not a subsequent purchaser or encumbrancer. The recording of an instrument pursuant to a recording statute such as Rem.Rev.Stat. § 10596—2 [P.C. § 1914—2], is constructive notice to those persons only who acquire interests subsequent to the execution of the instrument of who, in dealing with property, are compelled to search the public records in order to protect their own interests; it does not affect the rights of prior parties. *Ackerson v. Elliott*, 97 Wash. 31, 41, 165 P. 899, 903; 45 Am.Jur. 470, Records and Recording Laws, § 89.

*Ryan v. Plath*, 140 P.2d 968, 979-80 (Wash.1943).

Just as a remainderman is not charged with the duty of keeping his estate under constant observation out of a fear that the life tenant may repudiate his life tenancy and claim the whole of the estate, *Quarles v. Arthur*, 231 S.W.2d 589 (Tenn.Ct.App.1950), so a grantor, under an installment land contract is not required to constantly inspect a deed registry in order to preserve his title. Such recording statutes "impart constructive notice only to those who claim through or under the grantor in question." *Piel v. DeWitt*, 351 N.E.2d 48, 54 (Ind.App.1976). The grantors in the Deed of Trust are the Ridleys, not Burch.

A case strikingly similar on its facts to the case at bar is *Kendrick v. Davis*, 452 P.2d 222 (Wash.1969). In that case, the sellers Mr. and Mrs. Kendrick entered into a contract with the purchasers Mr. and Mrs. Davis for the installment sale of real property. The Contract was recorded on October 4, 1961. On October 27, 1961, and on November 5, 1964, the purchasers assigned their interests to Lee James Finance Plan, Inc. as security for certain loans. Purchasers made their last payment to sellers under the contract on August 2, 1965, and on January 6, 1966, sellers sent a notice by registered mail to the purchasers that unless the delinquent payments were made by January 31, 1966, the Contract would be forfeited. Having received no response, on February 1, 1966, sellers sent a Notice of Declaration of Forfeiture and Cancellation of Contract to the purchasers. This Notice was received by the purchasers on February 3, 1966, and recorded on March 21, 1966. On April 21, 1966, Sellers filed an action against Purchasers to quiet title to the property covered by the Contract. On May 31, 1966, Sellers amended their Complaint to name Lee James Finance Plan, Inc. and an associate company making such assignees party defendants and seeking to quiet title as to all defendants. On June 24, 1966, the assignees filed an answer claiming an interest in the property by virtue of a Purchaser's Assignment of Contact and Deed for Security. On July 1, 1966, the purchasers filed an answer in general denial of the allegations of the Complaint. On July 8, 1966, Plaintiff/Sellers filed a Motion for Summary Judgment against all defendants.

On September 7, 1966, the two assignees tendered into court the sum of $16,113 which constituted the entire balance due under the Contract between the seller and the purchaser, together with costs and attorney's fees. On October 7, 1966, the trial court entered summary judgment in favor of the sellers and against the buyers under the Contract, but considering itself bound by a prior decision of the Supreme Court of Washington, the summary judgment motion against the assignees was denied and the court adjudged that the assignees could step into the shoes of the purchasers under the Contract, assume the obligations of the Contract and upon payment of all arrearages under the Contract, simply assume future installment payments. The purchasers did not appeal the judgment, but the sellers appealed the judgment as to the assignees.

The Supreme Court of Washington first acknowledged the rule that the purchaser of an executory real estate contract has an interest in the property which he can mortgage. In reversing the trial court and declaring the installment contract forfeited as to all parties, the court held:

> In view of our holding in *Norlin v. Montgomery*, *supra*, we must examine the question of whether the fact that the defendants' mortgages were recorded constituted constructive notice to the vendor. If the vendor was given constructive notice by the recording, then he clearly was under a duty to give the mortgagees notice of his intent to forfeit the contract. But the recording of the mortgages did not give constructive notice of their existence to the vendor who was an antecedent party in the chain of title.

> The recording of an instrument is constructive notice only to those parties acquiring interests subsequent to the filing and recording of the instrument. The recording of an instrument does not constitute notice to antecedents in the chain of

title. *Ackerson v. Elliott*, 97 Wash. 31, 165 P. 899 (1917); *Ryan v. Plath*, 18 Wash.2d 839, 140 P.2d 968 (1943); *Waldrip v. Olympia Oyster Co.*, 40 Wash.2d 469, 244 P.2d 273 (1952); *Finley v. Finley*, 43 Wash.2d 755, 264 P.2d 246, 42 A.L.R.2d 1379 (1953).

Two or three other Washington cases make the general statement that "the recording of an instrument is notice to the world" without limiting the statement to parties who are subsequent in the chain of title. However, the reading of each of these cases, with a single exception, will show that the general statement was used in a case wherein the party had received actual notice or was a case wherein the party to whom constructive notice was imputed was, in fact, a subsequent party. *See Strong v. Clark*, 56 Wash.2d 230, 232, 352 P.2d 183 (1960) (involved a subsequent party); *Allen v. Graaf*, 179 Wash. 431, 38 P.2d 236 (1934) (involved an antecedent party who had *actual* knowledge of the claim of the subsequent lienholder). The single exception is *Norlin v. Montgomery*, 56 Wash2d 268, 367 P.2d 621 (1961). *Norlin* cites and relies on *Smith v. Northern Pac. R. Co.*, 22 Wash. 500, 61 P. 255 (1900); *Brummett v. Campbell*, 32 Wash.358, 73 P. 403 (1903); *Shaw v. Benesh*, 37 Wash. 457, 79 P. 1007 (1905); *Scott v. Farnam*, 55 Wash. 336, 104 P. 639 (1909); and *Strong v. Clark*, *supra*. Each of these supporting cases were cases involving either *actual* notice to the vendor or a *subsequent* party in the chain of title.

We state in *Smith, supra*, 22 Wash. at 509, 61 P. at 257, "[A]nd, having actual notice of the existence of plaintiff's mortgage prior to any attempt upon its part to declare a forfeiture, the mortgagee was entitled to notice of [forfeiture] * * *."

We state in *Brummett*, *supra*, 32 Wash. at 367, 73 P. at 406, "The appellant was fully aware of the obligation of Koontz under this contract to convey this land to Ray * * * at the time he became the assignee of the contract between Koontz and the state."

*Shaw, supra*, was a case involving the right of a pledgee (assignee) of the vendor who attempted a forfeiture without notice to *his own assignee*.

*Scott, supra*, 55 Wash. at 340, 104 P. at 641, states, "The appellants had actual notice of the respondent's mortgage."

*Strong, supra*, was a case wherein the plaintiff was a trustee in bankruptcy who was alter ego for creditors who were *subsequent* parties properly charged with notice of a recorded instrument. The notice therein was as to the commencement of the running of the statute of limitations and the creditors were not parties who dealt with the real estate and the chain of title thereto.

Accordingly, *Norlin, supra*, is overruled insofar as it is inconsistent herewith.

> Defendants, having failed to give plaintiff notice of their mortgagee interests, were not entitled to receive a notice of the forfeiture. The contract was forfeited in accordance with its terms and there is no purchaser's interest remaining in the realty upon which the assignees' (mortgagees') claims can attach.

*Kendrick v. Davis*, 452 P.2d 222, 228 (Wash. en banc 1969); *see also Hauf v. Johnston*, 21 P.3d 325 (Wash.Ct.App.2001).

The record discloses no equitable considerations which could benefit MB&G. It is plainly evident that MB&G was aware of the forfeiture provisions of the Burch/Ridley Installment Land Contract prior to ever taking the Deed of Trust from the Ridleys. The purchasers Ridleys had previously defaulted in payments under the Contract, and Burch had previously exercised his rights to accelerate. On December 14, 1998, MB&G sent a certified mailed letter to Burch and to his attorney, L. Thomas Austin, providing in pertinent part:

> This will confirm our understanding that Mr. and Mrs. Ridley have made acceptable arrangements for payment on the above-referenced land contract such that you have agreed to withdraw your acceleration of the Ridley's land contract obligations as noticed in your letter dated December 2, 1998.

There is no indication anywhere in the record that MB&G ever gave any kind of notice to Burch of their Deed of Trust of July 30, 1999.

MB&G was representing Johnny Lamar Ridley in federal court criminal litigation throughout the period of default in the Installment Land Contract and was well aware of the precarious financial position of the Ridleys. They not only had constructive notice of the provisions of the Installment Land Contract from and after its recording on July 12, 1995, but had actual knowledge of such provisions at least as early as their December 14, 1998, letter to Burch. They did not choose, however, to pay the periodic installments under the Land Contract but allowed the default.

MB&G as assignee of Ridley has only derivative rights. This Court has held in a related context:

> The trial court held, and we agree, that Southern's right to recover under the Sales Listing Agreement is entirely derivative from and dependent upon the rights of its assignor, the Binswanger Company. An assignee of a non-negotiable chose in action, such as a contract, steps into the shoes of his assignor and takes his assignor's rights subject to all defenses which may be asserted against the assignor in an action to enforce the right. *Third Nat'l Bank v. Capitol Records, Inc.*, 60 Tenn.App. 198, 445 S.W.2d 471 (1969). Southern's right to recover under the Agreement in this case is determined by the rights of Binswager Company. If the Binswanger Company is barred from recovery, so too is Southern. In other words, if the Binswanger

Company does not have shoes, Southern has nothing to step into. We have, after our review of this record, determined that Binswanger was shoeless.

*Binswanger Southern (N.C.) v. Textron*, 860 S.W.2d 862, 865-66 (Tenn.Ct.App.1993).

Other issues raised on appeal are without merit. Neither Article 1, Section 8 of the Constitution of Tennessee nor the 14th Amendment to the Constitution of the United States are offended by any action in this case for reasons set forth in *Bryant v. Tenet, Inc.*, 969 S.W.2d 923 (Tenn.Ct.App.1997) wherein it is said:

> The next question, then, is whether Article I, § 8 of our Constitution requires private actions to conform to the requirements of due process before taking action with respect to that right. We conclude that it does not. Article 1, Section 8 fo the Tennessee Constitution provides as follows:
>
>> That no man shall be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.
>
> In *State v. Hale*, 840 S.W.2d 307, 312 (Tenn.1992), our Supreme Court said:
>
>> The phrase, 'the law of the land', used in this section of our State Constitution, and the phrase, 'due process of law,' used in the Firth Amendment and in the first section of the Fourteenth Amendment to the Constitution of the United States, are synonymous phrases meaning one and the same thing.
>
> *See also Burford v. State*, 845 S.W.2d 204 (Tenn.1992); *State v. Smith*, 834 S.W.2d 915 (Tenn.1992). Since "state action" is necessary to invoke the protection of the Fourteenth Amendment, *Long v. State*, 510 S.W.2d 83 (Tenn.Crim.App.1974), we conclude that the same is true with respect to Article I, § 8.
>
> We recognize that Article I, § 8 has been interpreted as prohibiting some state actions that would not violate the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution. *Compare North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976) and *State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779 (Tenn.1980). But, despite the differences in wording in the two constitutional provisions, the fundamental protection provided by each is protection from the government. *State v. Heer*, 413 S.W.2d 688, 220 Tenn. 36 (1967); *Ennis v. State*, 549 S.W.2d 380 (Tenn.Crim.App.1976). We know of no case that applies the protection of Article I, § 8 to actions by individuals.

*Bryant v. Tenet, Inc.*, 969 S.W.2d 923, 925 (Tenn.Ct.App.1997).

Likewise, *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983) involved state action rather than action of individuals.

Appellant attempts to assert that Jennifer Ridley was not properly served with process in the previous action of *Burch v. Ridley* resulting in the default judgment that terminated Ridley's rights under the Installment Land Contract. The judgment in that case was final and no appeal therefrom was perfected. The oath of Mrs. Ridely is insufficient to overcome the officer's return in the previous action, and such service is not amenable to collateral attack for reasons stated in *Jackson v. Aldridge*, 6 S.W.3d 501 (Tenn.Ct.App.1999) (perm app. denied November 29, 1999).

Appellants further assert that the grantees Ridley were entitled to recover the value of their improvements to the property. If this were true, it would obviously have been an issue in the previous suit between Burch and the Ridleys for which judgment has long been final. The final judgment in that case is *res judicata* of this issue in a suit wherein the assignee of Ridley asserts the same right precluded by the previous action. *National Cordova Corp. v. City of Memphis*, 350 S.W.2d 792, 796 (Tenn.1964).

In the final analysis, MB&G with actual knowledge and full notice of the provisions of the Installment Land Contract between Burch and Ridley took what amounts to an assignment from Ridley to secure attorney's fees in federal court litigation. MB&G did not notify Burch of such assignment and neither the recording of the Deed of Trust securing MB&G nor any other action disclosed by the record provided constructive notice to Burch of any rights of MB&G in the property. MB&G had full knowledge of the default provisions of the Installment Land Contract and the rights of Burch to declare default upon nonpayment under the terms of that Contract. MB&G did not undertake to protect its derivative interest by paying the installments as they became due but relied instead on the erroneous assumption that Burch had some form of obligation to provide notice to an unknown assignee that he was exercising his rights under the Contract.

The rights of MB&G can rise to no greater dignity than the rights of their assignor Ridley, and the judgment of the Chancellor is in all respects affirmed.

Costs of the cause are assessed against Appellants.

_____
WILLIAM B. CAIN, JUDGE